RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 2/11/14

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| FRANCISCO SAUL MIRANDA | DOCKET NO. 13-CV-2739; SEC. P |
| VERSUS | JUDGE DEE D. DRELL |
| JERRY MARTINEZ, ET AL. | MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION

Before the Court is the *pro se* complaint of Plaintiff Francisco Saul Miranda, filed pursuant to <u>Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics</u>[1]. [Doc. #1,6] Plaintiff is an inmate in the custody of the Federal Bureau of Prisons [BOP], presently confined at the United States Penitentiary - Allenwood, in White Deer, Pennsylvania. He names as defendants Jerry Martinez, J. Le, Jenna Epplin-Deville, Harley Lappin, Harrell Watts, and the BOP.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

*Factual Allegations*

Plaintiff alleges that, on or about July 31, 2011, he was "subjected to a conspiratorially planned special management unit

---

[1] In <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), the Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officials that is comparable to the statutory cause of action permitted against state officials by 42 U.S.C.A. § 1983.

referral and a conspiratorially planned trumpt up disciplinary action." [Doc. #1] He alleges that J. Le filed a charge of assault against Plaintiff with non-existing videotaped evidence. [Doc. #1, p.3] On September 15, 2011, Jerry Martinez assigned his secretary, Jenna Epplin-Deville, to act as alternate Disciplinary Hearing Officer. Defendant Epplin-Deville conducted a "kangaroo hearing" and unlawfully convicted Plaintiff of assault. On December 14, 2011, Defendant Jerry Martinez referred Plaintiff to the Special Management Unit due to the conviction. On February 13, 2012 was approved for designation to a Special Management Unit. [Doc. #1, p.3-4] On June 29, 2012, Plaintiff was provided with the disciplinary hearing officer's report. On July 4, 2012, Plaintiff filed an appeal of the assault conviction. On August 7, 2012, the conviction was remanded for further review and rehearing, if necessary, thereby partially granting Plaintiff's appeal. [Doc. #6, Exhibit A] Plaintiff apparently appealed to the Central Office, but the appeal was rejected and returned to Plaintiff on September 26, 2012, because he did not submit it in proper form. [Doc. #6, p.20] He states that the assault conviction was expunged. [Doc. #6, p.19]

Plaintiff complains that the false disciplinary charge and SMU referral resulted in him spending either forty months [Doc. #1,

2

p.4] or thirty months [Doc. #6, p.7] in segregation[2].

## *Law and Analysis*

A claim that a prisoner was improperly charged with things he did not do, standing alone, does not state a due process claim. See Collins v. King, 743 F.2d 248, 253 (5th Cir. 1984). In Sandin v. Connor, 515 U.S. 472, 481-83 (1995), the United States Supreme Court held that analysis of a prisoner's due process claim, relating to his placement in lockdown or other denial of prison privileges as disciplinary punishment, begins with determining whether a constitutionally protected liberty interest exists. The Constitution itself does **not** give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. See Wilkinson v. Austin, 545 U.S. 209, 221 (2005)(citing Meachum v. Fano, 427 U.S. 215, 225 (1976)). Liberty interests are generally limited to freedoms from restraint that imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. See Sandin, 515 U.S. at 484 (citations omitted)[3]. Thus, in Sandin, when a prisoner was placed in

---

[2]Only 12 months passed from the time Plaintiff was charged with assault - July 31, 2011 - to the time his conviction was remanded by the regional director - August 7, 2012. At the time of filing suit, only twenty-five months had passed since the date of the charge. So even if Plaintiff had been in segregation from the date of the charge to the date of filing suit, it still does not come close to the alleged forty months.

[3]While Sandin addressed state-created liberty interests under the Fourteenth Amendment, its reasoning applies equally to Fifth Amendment due process claims brought by federal prisoners pursuant to Bivens. Crowder v. True, 74 F.3d 812, 814-15 (7th Cir. 1996).

disciplinary segregation and the placement did not inevitably affect the <u>duration of his sentence</u>, the Court held that due process does <u>not</u> require that a prisoner be afforded the procedural mechanisms previously prescribed in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), and <u>Hewitt v. Henderson</u>, 271 Fed.Appx. 426 (5th Cir. 2008).

The Due Process Clause does not protect every change in conditions of confinement that has a substantial adverse effect upon a prisoner.  See <u>Madison v. Parker</u>, 104 F.3d 765, 767 (5th Cir. 1997).  "Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." <u>Wilkinson v. Austin</u>, 545 U.S. 209, 225 (2005) (citations omitted). Examples of prison hardships that would qualify as so atypical and significant as to implicate due process considerations include unwanted administration of anti-psychotic drugs, involuntary commitment to a mental hospital or extension of the prisoner's sentence for his underlying criminal conviction.  See <u>Sandin</u>, 515 U.S. at 484.

In this case, Plaintiff has not alleged the existence of a liberty interest requiring due process, i.e., that his punishment, a change in his custody to Special Management Unit, imposed an atypical or significant hardship beyond the ordinary incidents of

4

prison life such that he was deprived of a cognizable liberty interest. See Sandin v. Conner, 515 U.S. 472, 484 (1995); Dickerson v. Cain, 241 Fed.Appx. 193, 194 (5th Cir. 2007). In Wilkerson v. Stalder, the Fifth Circuit held that due process might have been violated where the plaintiffs had been kept on lockdown status for 30 years. 329 F.3d at 436 (remanding for determination whether such confinement was "atypical" under Sandin). In another case, the Supreme Court held that transfer to the Ohio "Supermax" facility implicated a liberty interest, in part because conditions there were "more restrictive than any other form of incarceration in Ohio." Wilkinson v. Austin, 545 U.S. at 214.[4] These conditions and others were sufficiently extraordinary that the Supreme Court concluded prisoners had a liberty interest in avoiding assignment to the Supermax facility. Id. Plaintiff does not allege any conditions of his segregation that are "atypical" to implicate a due process liberty interest. See e.g., Oser v. Pollock, 2013 WL 5977964 (5th Cir. 2013)("Oser has not alleged facts indicating that his placement in any SHU or SMU after the expiration of his disciplinary sentence imposed any atypical or significant hardship

---

[4] The Wilkinson Court noted that at the Supermax facility, "almost all human contact is prohibited." Id. at 223. Ohio Supermax prisoners are kept in single cells with solid metal doors that prevent communication from one cell to another; prisoners take all their meals alone in their cells rather than in a common area; and "opportunities for visitation are rare" and are conducted through glass walls. Id. at 214, 223-24. Ohio Supermax inmates spend 23 hours a day alone in their cells, where a light remains on at all times. Id. at 224, 125 S.Ct. 2384. The Supreme Court further noted that confinement at the Supermax facility was indefinite, and otherwise eligible inmates were disqualified for parole consideration. Id.

in relation to the ordinary incidents of prison life. He therefore failed to state a claim.")(citing Sandin v. Conner, 515 U.S. at 484; Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995); see also Robinson v. Norwood, 535 Fed.Appx. 81 (3rd Cir. 2013)(placement in the SMU did not constitute a dramatic departure from the accepted standards for conditions of confinement such that due process was implicated);

Moreover, **even if due process was implicated**, Plaintiff received all of the process to which he was due. He does not make allegations indicating that he was denied of any procedural safeguards of Wolff, supra, which include: (1) written notice of the charges against him at least 24 hours prior to the hearing; (2) a written statement of the fact finders as to the evidence relied on and the reasons for the disciplinary action taken; and (3) the opportunity to call witnesses and present documentary evidence in his defense, unless these procedures would create a security risk in the particular case. See Wolff, 418 U.S. at 563-66. Plaintiff received notice and was afforded a hearing. He appealed the decision and the case was remanded. He did not properly appeal to the Central Office. Nonetheless, he was not deprived of the right to appeal.

Finally, the Fifth Circuit has held on numerous occasions that "[i]nmates have no protectable property or liberty interest in custodial classification." Whitley v. Hunt, 158 F.3d 882, 889 (5th

6

Cir. 1998)(change in security classification based on allegedly inaccurate information).

### *Conclusion*

For the foregoing reasons, **IT IS RECOMMENDED** that the complaint be **DENIED AND DISMISSED** with prejudice pursuant to 28 U.S.C. §1915(e)(2)(b) and 1915A.

### *Objections*

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes his final ruling.

FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE TO WHICH THE PARTY DID NOT OBJECT.

**THUS DONE AND SIGNED** at Alexandria, Louisiana, this 10th day of February, 2014.

```
_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE
```